153 So. 409

**BOOKER T. WASHINGTON BURIAL INS. CO. v. ROBERTS et al.**

**6 Div. 525.**

Supreme Court of Alabama.
March 8, 1934.

. G. P. Benton, of Fairfield, for appellant.

C. B. Powell, of Birmingham, for appellees.

**208'**

FOSTER, Justice.

 Ancient United Knights and Daughters of Africa was a fraternal order with a ritualistic ceremony and an insurance feature. The members paid a stipulated sum into the endowment fund, out of which death claims were payable. That fund by operation of law was held in trust for that purpose. Section 8450, Code; McCall v. Grand Lodge, 217 Ala. 194, 115 So. 254; Grand Lodge v. Shorter, 219 Ala. 293, 122 So. 36; Id., 222 Ala. 404, 132 So. 617; Carter v. Mitchell, 225 Ala. 287, 142 So. 514; National Circle, Daughters of Isabella v. Hines, 88 Conn. 676, 92 A. 401; Kane v. Knights of Columbus, 84 Conn. 96, 79 A. 63.

Prior to March 15, 1932, Malvina Adams was a member, and had a contract of insurance, with Leola Roberts and Minnie Lee Adams named as beneficiaries. Malvina Adams died on June 27, 1931, so that on March 15, 1932, those beneficiaries had a claim payable out of that trust fund. On January 11, 1933, they instituted a suit against Ancient United Knights and Daughters of Africa, and a judgment was rendered on January 24, 1933. Thereupon a garnishment was issued to Booker T. Washington Burial Insurance Company as garnishee. This proceeding was the hearing of a contest of the answer of the garnishee denying indebtedness.

On March 15, 1932, certain officers for the garnishee and defendant entered into a verbal agreement on behalf of their companies, respectively. They differ as to its terms.

The evidence for plaintiff in the contest tends to show that on that day defendant agreed to, and did pay the garnishee $850, which was all the money defendant then had in its endowment fund, except $150, and that the garnishee agreed by adding $1,000 to pay the standing death claims which had accrued, of which plaintiffs had one, all of

which exceeded $2,000. The garnishee also. as shown without conflict in the evidence, agreed and undertook to reinsure the contracts of insurance then outstanding issued by defendant upon the further agreement that defendant would continue to collect from its members the endowment funds provided for by its regulations, and remit them to the garnishee.

The evidence for the garnishee tended to show that it received the $850, but that by the agreement it was to be paid out pro rata to the accrued claimants, on the orders of the defendant.

 Ordinarily, a garnishment is not available unless the defendant has a claim against the garnishee on which he can maintain debt or assumpsit. Grand Lodge, etc., v. Harrison, 5 Ala. App. 373, 59 So. 307: Nathan v. St. John, 146 Ala. 596, 40 So. 970: Cunningham v. Baker, 104 Ala. 160, 16 So. 68, 53 Am. St. Rep. 27. If the claim consists of damages for the breach of a contract, and those damages can be measured by a legal standard, it is subject to a suit in debt or assumpsit (as to which there is now no distinction in Alabama. Reed v. Scott, 30 Ala. 640), and therefore to garnishment (Henry v. Murphy, 54 Ala. 246; Allen v. Raney, 19 Ala. 68, 71; Wetumpka & Coosa R. R. Co. v. Hill, 7 Ala. 772; Cunningham v. Baker, supra; 18 Corpus Juris 7).

 It results from those principles that if this garnishee made a valid contract with defendant, by which it agreed to pay the death claims which had accrued on March 15, 1932, and breached that contract, defendant had a cause of action in debt, or assumpsit, which was subject to the garnishment. Plaintiffs were beneficiaries of that agreement, and could have sued the garnishee for its breach, but that was not the only remedy available to them to collect their debt. The defendant continued to be liable for it. Plaintiffs had the right, as they did, to pursue the claim against defendant to judgment, and to treat the garnishee as a debtor to defendant as for the breach of that contract. Henry v. Murphy, supra; Copeland v. Beard, 217 Ala. 216, 115 So. 389; Clark v. Nelson, 216 Ala. 199, 112 So. 819, 53 A. L. R. 173; Meyerson v. New Idea Hosiery Co., 217 Ala. 153, 115 So. 94, 55 A. L. R. 1231; Dowling v. Parker, 221 Ala. 63, 127 So. 813.

 But the right to pursue garnishment for the damages occasioned by a breach of the contract presupposes a valid contract. For the garnishee may interpose any defense, except as hereafter noted, which would be

available for its breach in a suit by defendant. Pettus v. Dudley Bar Co., 218 Ala. 163, 118 So. 153.

The one contract between them not only related to accrued claims, but by it the garnishee undertook to reinsure for defendant all existing contracts on which no claim had accrued.

Sections 8467, 8468, and 8469, Code, make provision for reinsurance by a fraternal benefit society. The contract is expressly prohibited by law unless it shall be submitted to the governing bodies of each of the parties, and, if approved by them, shall be submitted to the commissioner of insurance for his approval. If he approves it, he shall issue a certificate to that effect, and the contract shall be in force. Restrictions of that kind have been held to be effective. Iowa L. Ins. Co. v. Eastern M. L. Ins. Co., 64 N. J. Law, 340, 45 A. 762; 33 C. J. 45. No such proceeding is here shown.

█ And no fraternal benefit society may have its contracts reinsured by a company not licensed as a fraternal benefit society. Section 8467, Code. So that if the garnishee is not such a society, it is prohibited from making the contract, though approved by its governing board, since defendant is shown to be such a society.

██ Contracts specially prohibited by law are void and not enforceable. The court will not interfere at the suit of either, but the parties are left where they have placed themselves. Gill Printing Co. v. Goodman, 224 Ala. 97, 139 So. 250; Westenhaver v. Dunnavant, 225 Ala. 400, 143 So. 823; Georgia Fruit Exch. v. Turnipseed, 9 Ala. App. 123, 62 So. 542, 544; Greil Bros. v. McLain, 197 Ala. 136, 72 So. 410; Ellis v. Batson, 177 Ala. 313, 58 So. 193. This principle prohibits one party to the transaction from recovering of the other funds paid under the prohibited contract either in an action for money had and received or in trover, or for conversion, and cannot benefit to that end by the doctrine of estoppel. Ellis v. Batson, supra; Town of Cottonwood v. Austin, 158 Ala. 117, 48 So. 345.

█ The principle is also established that if a part of the transaction is prohibited by law, it is void and not enforceable to any extent, as though it were prohibited in all respects. Wadsworth v. Dunnam, 117 Ala. 661, 23 So. 699; Long v. Holley, 177 Ala. 508, 58 So. 254; Armstrong v. Walker, 200 Ala. 364, 76 So. 280.

█ It is clear, therefore, that the garnishee cannot be subjected to judgment in this suit on account of the breach of its contract, if such be found to have been made.

█ There is an exception to the general rule that in a garnishment suit defendant must have a claim in contract on which it may sue in debt or assumpsit. The exception is that garnishment is available if the garnishee has received money or effects of the debtor under a fraudulent transfer, and void at the suit of creditors. Cottingham v. Greely, 129 Ala. 200, 30 So. 560, 87 Am. St. Rep. 58; Henry v. Murphy, 54 Ala. 256; Cunningham v. Baker, 104 Ala. 168, 16 So. 68, 53 Am. St. Rep. 27; Alexander v. Pollock, 72 Ala. 137; American Tr. & Savs. Bank v. O'Barr, 12 Ala. App. 546, 67 So. 794; Stovall v. Hamilton, 14 Ala. App. 484, 71 So. 63; 27 C. J. 708.

The theory is that by reason of the fraud the grantee holds the property as that of the debtor in trust for his creditors for the purpose of subjecting it to their demands. The cases cite section 8061, Code, authorizing garnishment against a trustee of defendant's property. The creditor can go into equity, and cause the grantee to account as a trustee by reason of the fraudulent conveyance, or he may resort to garnishment to accomplish the same purpose, all because the grantee holds the property as a constructive trustee for the creditors working back through the debtor. For generally, if a constructive trustee disposes of the personal property held in trust in violation of the trust, a beneficiary may reach it, or its proceeds in equity or in some appropriate action at law, unless some special available defense exists. 65 C. J. 960, 1008.

█ In this case plaintiffs had no specific lien created by law or contract. Defendant had possession of a fund which the law directed to be used in paying claims such as plaintiffs' and for no other purpose. When defendant put that fund in the hands of another, with notice of the fact, we can see no difference in principle between that situation and a case where a debtor has property subject to his debts and he fraudulently conveys it to another with notice. In both instances it is an effort to place property subject to a debt in the hands of another beyond the ordinary reach of the creditor. If garnishment is proper in one instance, we see no reason why the same principle would not make garnishment apply to the other. But the grantee

"cannot be held to account for the property, or the proceeds arising from the sale of it, which has been applied by him in good faith to the payment of the debts of the grantor." Cottingham v. Greely, supra, 129 Ala. 205, 206, 30 So. 560, 562, 87 Am. St. Rep. 58, quoting from Bump on Fraudulent Conveyances. To the same effect is the case of Miller v. Buell, 226 Ala. 212, 146 So. 613; 12 R. C. L. 641, § 148.

 If the principle would make the garnishee liable to account to the creditors in a suit of this sort, it would also exonerate him upon his application of the full amount to the payment in good faith of the claims of creditors for whose benefit the fund was created. Again, "if he pays the value of the property to those to whom the property rightfully belongs it is all that is required of him." The burden is upon such garnishee to show "the debts discharged were subsisting legal, bona fide demands against his grantor." In the Cottingham Case, supra, as in this, the court erred in refusing to permit the garnishee to show that it had paid the full amount it had received on claims which should have been paid out of the fund.

 The garnishee received not only $850 paid it by defendant on March 15, 1932, but additional sums to the extent of $514.50, making a total of $1,364.50. They were all endowment funds, and death claims were payable out of them to the extent that money in the fund existed. Those which arose prior to March 15th were not limited to the $850, and those which arose after that date were not limited to the $514.50. None of them had a lien or right in priority over the others.

 Under the principle asserted in Cottingham v. Greely, supra, and Miller v. Buell, supra, if the garnishee has paid the full amount of $1,364.50 (if that is the correct amount of that fund received), to those who had bona fide and just claims payable out of it, without collusion, plaintiffs are not entitled to judgment. If there is any balance unpaid on that basis, the same is liable to plaintiffs' garnishment.

We have given no consideration to the principle of equitable apportionment upon the theory that the property of an insolvent corporation must be thus disposed of by virtue of section 7062, Code, as no such principle may arise.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.